**Derivados ACRILICOS, Plaintiff,**

v.

**Donald T. REGAN, Secretary, Department of Treasury, et al., Defendants,**

**American Yarn Spinners Association— Long Staple Product Group, Defendant-Intervenor.**

**Court No. 84–09–01247.**

United States Court of International Trade.

Sept. 9, 1985.

Adduci, Dinan & Mastriani, Leslie Alan Glick, Louis S. Mastriani, Jeffrey A. Meeks, Washington, D.C., and Barbara A. Murphy, for plaintiff.

Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Platte B. Moring, III, Washington, D.C., for defendants.

Miller & Chevalier, Chartered, Donald Harrison and Kenneth B. Reisenfeld, Washington, D.C., for defendant-intervenor.

## Memorandum Opinion and Order

DiCARLO, Judge:

Plaintiff, a Mexican exporter of acrylic yarn to the United States, challenges the legality of action taken by defendants to change a statistical headnote of the Tariff Schedules of the United States Annotated (TSUSA)[1] and to retain plaintiff's product within a TSUSA item for which the quota for products from Mexico was filled for 1983 and 1984.

In November 1984 the United States and Mexico amended an agreement establishing a quota for the importation of products under the TSUSA item which includes plaintiff's product. Defendants have moved to dismiss the action as moot. Plaintiff, seeking to avoid the quota, maintains that its product is not covered by the amendment and opposes the motion.

## BACKGROUND

In 1979 the United States and Mexico entered into an Agreement on Trade in Textiles and Textile Products (the Agreement)[2] in accordance with the Arrangement Regarding International Trade in Textiles (Multifiber Arrangement or MFA).[3] The Agreement stated, *inter alia* that "the Government of the United Mexican States will limit Mexican exports to the United States of America of products classified in TSUSA 310.5049 ... to 3.5 million square yards equivalent...."[4]

In 1981 the Agreement was extended until the end of 1985, and the restrictions on yarns imported under item 310.5049, TSUSA, were eliminated.

---

1. Congress has established the five digit Tariff Schedules of the United States (TSUS). All products with the same five digit TSUS classification have the same rate of duty. Seven digit TSUSA numbers, the TSUS number with two digit statistical suffixes or "annotations", are established by the Committee for the Statistical Annotation of Tariff Schedules (484(e) Committee). The 484(e) Committee is established pursuant to 19 U.S.C. § 1484(e) (1982) which provides in part:

    The Secretary of the Treasury, the Secretary of Commerce, and the United States International Trade Commission are authorized and directed to establish from time to time for statistical purposes an enumeration of articles in such detail as in their judgment may be necessary....

2. February 26, 1979, United States-Mexico, 30 U.S.T. 3643, T.I.A.S. No. 9419.

3. December 20, 1973, 25 U.S.T. 1001, T.I.A.S. No. 7840.

4. The Agreement, paragraph 18(c), 30 U.S.T. at 3654, T.I.A.S. No. 9419, at 11.

In March, 1983, the United States determined that products imported under item 310.5049, TSUSA, were disrupting the domestic market and requested Mexico to enter consultations under the Agreement to limit exports. *See* 48 Fed.Reg. 22188 (May 17, 1983). In June, 1983, the United States unilaterally established a quota for annual imports of goods from Mexico under item 310.5049, TSUSA, at 759,421 pounds, under a formula established in the Agreement. Since Mexico shipped a total of 1,634,085 pounds during the first six months of 1983, this quota was filled when announced for 1983 and 1984.

Plaintiff's product was imported into the United States under item 310.5049, TSUSA, until June, 1983. In July, 1983, after the United States announced that further imports from Mexico under this item were prohibited for 1983 and 1984, plaintiff filed a "Request for Classification Ruling" with the United States Customs Service (Customs) seeking to have its product considered "textured" within the statistical headnote to Subpart E, Part I, Schedule 3, TSUSA,[5] and thus classifiable under item 310.5015, TSUSA. Merchandise classifiable under item 310.5015, TSUS, was not subject to a quota under the Agreement.

Customs prepared a letter to plaintiff's counsel dated December 1, 1983, stating that it considered plaintiff's product "textured" under the headnote and that a ruling to that effect would be issued thirty days from the date of publication of a notice in the Federal Register. The letter was not mailed, nor was such a notice published. Instead, on December 15, 1983, the 484(e) Committee[6] published a notice of changed definition of "textured" in the Federal Register.[7] 48 Fed.Reg. 55759.

On March 8, 1984, the 484(e) Committee changed the headnote, effective April 1, 1984, to its present wording.[8] Plaintiff concedes its merchandise has been within the wording of the headnote since December 15, 1983.[9]

In April, 1984, plaintiff attempted to enter a "test shipment" of its merchandise valued at less than $250.00 under item 310.-5015, TSUSA. Customs found the merchandise classifiable under item 310.5049, TSUSA, and refused entry. Plaintiff protested this decision under section 514(a) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1514(a)(1982). The protest was denied in July, 1984.

In September, 1984, plaintiff filed this action, invoking jurisdiction under 28 U.S.C. § 1581(a), (h), and (i)(3), (4).

Plaintiff states four causes of action. Plaintiff first alleges that the 484(e) Committee did not change the statistical headnote for a statistical purpose and therefore

---

**5.** The headnote stated at that time:

For the purpose of this subpart the term "textured", as used with reference to yarns, means such yarns having special characteristics of bulk or elasticity, or both, which have been imparted to the filaments, or the yarns, by twisting and untwisting, false twisting, crimping, curling, or other additional processing subsequent to the extrusion of the filaments from the spinneret in the case of yarns other than spun yarns, and subsequent to the yarn-spinning operation in the case of spun yarns.

**6.** *See* footnote 1, *supra.*

**7.** The underlined language was added and the bracketed language deleted from statistical headnote:

For the purpose of this subpart the term "textured" refers to filament[, as used with reference to yarns, means such] yarns having special characteristics of bulk or elasticity, or both, which have been imparted to the filaments[, or the yarns,] by twisting and untwisting, false twisting, crimping, curling, or other additional processing subsequent to the extrusion of the filaments from the spinneret [in the case of yarns other than spun yarns, and subsequent to the yarn-spinning operation in the case of spun yarns].

**8.** The headnote now reads:

For the purpose of this subpart the term "textured" refers to (a) yarns of continuous man-made fibers having special characteristics of bulk or elasticity, or both, which have been imparted to the filaments, by twisting and untwisting, false twisting, crimping, curling, or other additional processing subsequent to the extrusion of the filaments from the spinneret and (b) yarns of discontinuous man-made fibers which have been heavily brushed subsequent to spinning.

**9.** Complaint ¶¶ 25, 26.

acted *ultra vires.* Plaintiff contends that this change was made at the request of the Committee for the Implementation of Textile Agreements (CITA) [10] for the sole purpose of retaining plaintiff's product in item 310.5049, TSUSA, then subject to an embargo.

Plaintiff also complains that Customs made a "ruling" on November 23, 1984 that its product was "textured" within the existing headnote, and that this "ruling" was modified without following procedures required by 19 C.F.R. § 177; that various defendants violated the prior notice and comment procedures of the Administrative Procedure Act, 5 U.S.C. §§ 551, *et seq.* and deprived plaintiff of a property interest without due process of law in violation of the Fifth Amendment to the United States Constitution by changing the headnote.

On November 8, 1984, the United States and Mexico concluded an exchange of notes amending the Agreement to *inter alia,* limit imports of products under item 310.5049, TSUSA, to 1,000,000 pounds in 1984 and to 750,000 pounds in 1985. CITA announced new restraint limits for products under item 310.5049, TSUSA, effective November 27, 1984. 49 Fed.Reg. 46457 (Nov. 26, 1984).

Defendants [11] move to dismiss the action as moot. On March 7, 1985 the Court issued an order dismissing as moot plaintiff's claim under section 1581(a), since Customs said they would allow the "test shipment" subject to that claim to enter,[12] directing defendants to respond to plaintiff's interrogatories and requests for production of documents so that the action would not be further delayed, and requesting that the parties brief several questions relating to mootness of the claims raised under 28 U.S.C. § 1581(h) and (i).

The Court now holds that the action is moot.

## MOOTNESS

Article III of the Constitution limits the federal judicial power to cases and controversies. This "limits the business of federal courts to questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process...." *United States Parole Commission v. Geraghty,* 445 U.S. 388, 397, 100 S.Ct. 1202, 1209, 63 L.Ed.2d 479 (1980). The mootness doctrine applies "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack,* 395 U.S. 486, 496, 89 S.Ct. 1944, 1951, 23 L.Ed.2d 491 (1969).

Defendants argue that plaintiff has no interest in the resolution of its claims in this action since the amount of merchandise plaintiff can import into the United States has been determined by the 1984 amendment to the Agreement.[13]

Section 204 of the Agricultural Act of 1956, as amended, 7 U.S.C. § 1854 (1982), gives the President authority to agree with another nation to limit textile imports. Plaintiff says it does not challenge the President's authority under Section 204 to

---

**10.** Section 204 of the Agricultural Act of 1956, as amended, 7 U.S.C. § 1854 (1982), grants the President authority to negotiate agreements with other nations to limit the import of textile products into the United States, and to issue regulations to carry out such agreements. The President has delegated his authority under section 204 to CITA. *See* Exec. Order No. 11,651, 37 Fed.Reg. 4699 (1972), as amended, reprinted following 7 U.S.C.A. § 1854 (1984 Supp.). *See American Association of Exporters and Importers—Textile and Apparel Group v. United States,* 751 F.2d 1239 (Fed.Cir.1985).

**11.** The American Yarn Spinners Association— Long Staple Product Group was granted leave to intervene as a defendant on April 9, 1985.

**12.** During the course of this litigation, Customs determined that since this merchandise carried a visa by Mexico indicating that the total value of the shipment was less than $250.00, it should have been entered. Under the Agreement, importations valued at less than $250.00 are exempt from quota limitations.

**13.** On a motion to dismiss, the Court must construe the complaint in the light most favorable to the plaintiff; "[a]t this stage of the litigation we must accept [plaintiff's] allegations as true." *Hishon v. King & Spaulding,* 467 U.S. 69, ——, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59 (1984).

negotiate textile import restraint agreements with foreign governments and to carry out the negotiated agreements.[14]

Rather, plaintiff claims that this action—which asks the Court to restore the previous statistical headnote definition of "textured" and order plaintiff's product entered item 310.5015, TSUSA—is not moot because (1) the United States and Mexico did not agree to limit the amount of plaintiff's product which could be imported into the United States, and (2) plaintiff will have to pay duties under an antidumping duty order if its product is imported under item 310.5049, TSUSA, but not if it is imported under item 310.5015, TSUSA. The Court disagrees with both contentions.

The interpretation of an international agreement is a question of law; "courts interpret treaties for themselves...." *Kolovrat v. Oregon*, 366 U.S. 187, 194, 81 S.Ct. 922, 926, 6 L.Ed.2d 218 (1961). In interpreting an international agreement it is "elementary ... that the language ... must be the logical starting point." *Day v. Trans World Airlines*, 528 F.2d 31, 33 (2d Cir.1975); *see Sumitomo Shoji America, Inc. v. Avagliano*, 457 U.S. 176, 180, 102 S.Ct. 2374, 2377, 72 L.Ed.2d 765 (1982).[15]

The parties could refer to textile products by name or any other reference understood by them. They refer to such products by reference to the TSUSA. The parties agreed in 1979 to, *inter alia*, limit imports of yarns "classified in TSUSA 310.-5049."[16] Plaintiff's product was considered by the United States and Mexico to come within that item.[17] The United States and Mexico continued to refer to "TSUSA 310.5049" when they amended the Agreement in 1984. The coverage of item 310.-5049, TSUSA, had changed,[18] and reference to the item constituted an amendment of the coverage of the Agreement.

**14.** As our appellate court has said: "That is a broad grant of authority to the President in the international field in which congressional delegations are normally given a broad construction." *American Association of Exporters and Importers—Textile and Apparel Group v. United States*, 751 F.2d 1239, 1247 (Fed.Cir.1985).

**15.** *See Restatement of the Law of Foreign Relations (Revised)* (Tent.Draft No. 5) § 329 (April, 1985) (comparing the international law of treaty interpretation, codified in Vienna Convention on the Law of Treaties, art. 31, (Vienna Convention) U.N. Doc. A/CONF. 39/27, 8 Int'l Leg.Mat. 679 (1969), which focuses on "the ordinary meaning to be given to the terms", with American practice of determining "the meaning intended by the parties").

Although the Vienna Convention has not been ratified by the United States, the Department of State has said that, with respect to its substantive provisions, "the Convention is already generally recognized as the authoritative guide to current treaty law and practice." S.Exec.Doc.L., 92d Cong., 1st sess. (1971) p. 1. Courts have treated certain provisions of the Convention as authoritative. *See e.g. Day v. Trans World Airlines*, 528 F.2d 31, 33, 36 (2d Cir.1975) (applying art. 31); *United States v. Cadena*, 585 F.2d 1252, 1261 (5th Cir.1978) (applying art. 36).

**16.** Agreement, paragraph 18(c).

**17.** The Mexican Government issued plaintiff export visas for its product under item 310.5049, TSUSA.

The fact that plaintiff's product may have been within the statistical headnote to Subpart E, Part I, Schedule 3 in 1979, and therefore, properly classifiable under item 310.5015, TSUSA, is irrelevant. The United States and Mexico may have erred in referring to plaintiff's product as under item 310.5049, TSUSA. A state may invoke error in an agreement as invalidating its consent to be bound if the error related to a fact or situation which was assumed by that state to exist at the time when the agreement was concluded and formed an essential basis of its consent to be bound. *See* Vienna Convention, art. 48(1). But Mexico has not sought to invalidate the Agreement or the 1984 amendment for this or any other reason.

**18.** The Government of Mexico had notice that the statistical headnote was changed through the *Federal Register*, 48 Fed.Reg. 55759 (December 15, 1983), and notice of the need to consult the most current TSUSA through the explanatory notes to the *Correlation: Textile and Apparel Categories with Tariff Schedules of the United States Annotated (Cotton, Wool, Manmade Fibers)* (Rev.Jan.1984) (*Correlation*). The explanatory notes to the Correlation say that "[t]he terms used in defining the various types of man-made fiber yarns are defined fully in the TSUSA." *Id.* at vi. Defendants assert, and plaintiff does not dispute, that the Department of Commerce mails a copy of the *Correlation* to the Mexican Government annually. Defendant's Supplemental Memorandum on Defendant's Motion to Dismiss upon Grounds of Mootness, at 16 n. 35.

Plaintiff concedes that its product was within item 310.5049 as the item was defined at the time of the amendment, but makes two arguments why its product is not covered by the reference item 310.5049 in the amendment. Plaintiff says that the Mexican government "was forced to utilize the current definition of the tariff schedules that were in effect at the time of the amendment."[19] It also asserts that Mexico "justifiably expected that what was defined by the United States as textured when the Agreement was signed in 1979, would be continued to be defined as textured throughout the life of the Agreement."[20]

These arguments contradict each other—plaintiff's first argument acknowledges that the reference to item 310.5049 in the amendment covers its product, the second argument denies this—and both are rejected as a matter of law.

■ Plaintiff does not elaborate its first argument sufficiently for the Court to do more than summarily reject it.[21] Plaintiff's second argument is contradicted by the plain meaning of the amendment. Parties to a bilateral agreement may amend their agreement at any time.[22] There is no ambiguity in the reference in the parties' exchange of letters in October and November, 1984 to "Plied Acrylic Spun Yarn ... TSUSA 310.5049." Plaintiff concedes its merchandise has been covered by that item since December, 1983.[23] The Court holds that the parties referred to the merchandise within the meaning of item 310.5049, TSUSA, at the time of their exchange of letters amending the Agreement.[24]

Plaintiff also argues that the action is not moot because the Commerce Department, International Trade Administration's final affirmative countervailing duty determination and countervailing duty order in *Certain Textile Mill Products from Mexico*, 50 Fed.Reg. 10824 (March 18, 1985), includes products covered by item 310.5049, TSUSA, but not item 310.5015, TSUSA, in the description of merchandise included within the scope of the determination. Plaintiff argues that a favorable decision in this action could determine whether its product is subject to the countervailing duty order.

■ But, the Court's determination of the merits of this case would not resolve a countervailing duty controversy involving plaintiff's merchandise. The Commerce Department and the International Trade Commission determine the scope of countervailing duty orders or antidumping findings without regard to tariff classifications by the Customs Service. "[T]he ITA, not the Customs Service, is responsible for clarifying, where necessary, the scope of antidumping findings and antidumping duty orders.... [T]he ITA is in no way obligated to follow nor is it bound by the classification determinations of Customs...." *Diversified Products Corporation v. United States*, 6 CIT ——, ——, 572 F.Supp. 883, 887 (1983). *See Roquette Freres v. United States*, 7 CIT ——, ——, 583 F.Supp. 599, 605 (1984) ("A TSUS classification does not govern an ITC determination"); *Royal Business Machines v.*

19. Plaintiff's Surreply to Defendant's Reply to Plaintiff's Response to Defendant's Motion to Dismiss, at 8.

20. Plaintiff's Brief in Response to Order dated March 7, 1984, at 10.

21. International law does recognize of course that a treaty is void if a state's consent has been procured by the threat or use of force, and that a state may invoke fraud as grounds for invalidating its consent to be bound. *See* Vienna Convention, arts. 49, 52. Nothing in the record indicates that such circumstances exist here.

22. *See* Vienna Convention, art. 39(1).

23. *See* page 1086, *supra.*

24. Plaintiff cites a letter dated May 2, 1985, from Mario Rodriguez Montero, Minister for Trade and Fiscal Affairs of the Mexican Embassy in Washington, D.C. to Richard H. Imus, Textile Negotiator in the Office of the United States Trade Representative as an indication that Mexico "clearly believes that the change ... in the headnote ... violated the letter and spirit of the ... Agreement." Plaintiff's Brief in Response to the Order dated March 7, 1985, at 2. Since the Court finds the amendment unambiguous, it need not address the contentions made in this letter.

*United States,* 1 CIT 80, 507 F.Supp. 1007 (1980).

Moreover, it would be inconsistent with the statutory scheme for administrative and judicial review of countervailing duty determinations for this action to determine whether plaintiff's product is subject to the Commerce Department's countervailing duty order. Such orders may only be challenged in an action filed pursuant to 19 U.S.C. § 1516a(a)(2), invoking the Court's jurisdiction under 28 U.S.C. § 1581(c), and only after administrative remedies are exhausted. *See Ceramica Regiomontana, S.A. v. United States,* 5 CIT 23, 33, 557 F.Supp. 596, 604–605 (1983).

■ To summarize, plaintiff alleges that the change in the headnote and Customs' reversal of its "ruling" that plaintiff's product was within item 310.5015, TSUSA, were *ultra vires,* without the required notice and comment, and an unconstitutional taking of property. Plaintiff seeks to import its product under item 310.5015, TSUSA, not item 310.5049, TSUSA. The rate of duty under both items is the same. The only consequences of importation under 310.5015, TSUSA, rather than 310.5049, TSUSA, are the amount of the product which can enter the United States under the Agreement, and whether duties must be paid under the countervailing order.

Since the 1984 amendment to the Agreement between the United States and Mexico determines the amount of plaintiff's product which may be imported into the United States, and the amount of duty plaintiff would pay under the antidumping order is unaffected by this action, any decision by the Court with respect to plaintiff's allegations would be advisory.

The action is dismissed as moot. Judgment will be entered accordingly.