**Dennis Ray WINNINGHAM, Appellant,**

v.

**C.A. TURNER, Warden, United States Medical Center for Federal Prisoners, Springfield, Missouri, United States Parole Commission, Appellees.**

No. 88–2177.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 10, 1989.

Decided June 21, 1989.

Steven Brown, Springfield, Mo., for appellant.

David C. Jones, Asst. U.S. Atty., Springfield, Mo., for appellees.

Before LAY, Chief Judge, ARNOLD, and BOWMAN, Circuit Judges.

BOWMAN, Circuit Judge.

Dennis R. Winningham appeals from a District Court[1] judgment denying his 28

1. The Honorable William R. Collinson, Senior United States District Judge for the Western

U.S.C. § 2241 petition for a writ of habeas corpus. We affirm.

Winningham was sentenced by a federal district court June 3, 1977 to an eleven-year term of imprisonment. He was paroled December 13, 1979 but, pending determina-. tion of a possible parole violation, was taken into federal custody May 27, 1981, after accumulating 531 days of "street time." The Parole Commission's warrant application, a copy of which Winningham was given, specified the alleged parole violations to be considered at Winningham's parole revocation hearing [2] and listed courses of action the Commission might take if he were found to have violated parole. Regarding possible courses of action, the warrant application said

> the Commission may: (1) restore you to supervision, and, if appropriate, (a) reprimand you; (b) modify your conditions of supervision; or (c) refer you to a residential community treatment center for the remainder of your sentence; or (2) revoke your parole or mandatory release, in which case the Commission will also decide when to consider you for further release.

Designated Record at 12. See 18 U.S.C. § 4213(c)(3) (1982) (requiring Commission to provide notice of "the possible action which may be taken"), repealed by Pub.L. No. 98–473, Title II, § 218(a)(5), 98 Stat. 2027 (repeal does not affect this case). During the revocation hearing, at which Winningham was represented by counsel, Winningham admitted the allegations in

the warrant application. Following the hearing the panel recommended that Winningham's parole be revoked, that his "street time" be forfeited, and that he be re-paroled after service of eight months. The recommendations subsequently were approved by the Parole Commission. Winningham later was paroled on two more occasions, but each time his parole was revoked for violations.

Winningham filed his habeas petition February 10, 1988,[3] claiming he had not received proper notice that a possible consequence of his parole revocation hearing was forfeiture of "street time." The District Court denied his petition June 7, 1988, and Winningham appeals.

## II.

Winningham argues that he was denied his "full due process rights" when the Parole Commission failed to notify him "of all of the possible consequences of his parole revocation hearing, in particular, that his time spent on parole, or 'street time,' could be revoked." Brief for Appellant at 5.

In Morrissey v. Brewer, 408 U.S. 471, 488–89, 92 S.Ct. 2593, 2603–04, 33 L.Ed.2d 484 (1972), the Supreme Court set out the minimum requirements of constitutional due process for parole revocation hearings. The parolee, for example, must be given pre-hearing written notice of the alleged parole violations. The Court did not give any indication, however, that due process requires notice to the parolee of

District of Missouri.

2. The allegations were that while on parole Winningham committed crimes of damage to property/trespass to land and that he left the district without permission. The warrant application also stated that Winningham had pled guilty to the damage and trespass charges and that he had received sentences of 364 and 30 days respectively. Designated Record at 12.

3. At the time Winningham filed his habeas petition, he was incarcerated at the Medical Center for Federal Prisoners in Springfield, Missouri pursuant to his June 1977 sentence. On December 9, 1988 Winningham was placed on mandatory release; his sentence will not expire, however, until March 14, 1991. A prisoner placed on mandatory release is "deemed as if released on parole" until the expiration of his sentence

less 180 days, 18 U.S.C. § 4164 (1982), repealed by Pub.L. No. 98–473, Title II, § 218(a)(4), 98 Stat. 2027 (repeal does not affect this case) and is thus subject to the same restrictions and supervision as a parolee. See DeCuir v. United States Parole Comm'n, 800 F.2d 1021, 1022–23 (10th Cir.1986); Noorlander v. United States Attorney General, 465 F.2d 1106, 1108–09 (8th Cir. 1972), cert. denied, 410 U.S. 938, 93 S.Ct. 1398, 35 L.Ed.2d 603 (1973). If Winningham had been given credit for his "street time" he apparently would no longer be subject to such conditions. See Report to the Court, April 27, 1989, at 2. A "live" controversy hence remains and the case is not moot. See generally United States Parole Comm'n v. Geraghty, 445 U.S. 388, 396, 100 S.Ct. 1202, 1208, 63 L.Ed.2d 479 (1980).

the possible consequences of the hearing. Winningham asserts, however, that the due process concerns underlying the requirement of notice of the alleged parole violations, *i.e.*, that the parolee be afforded "sufficient notice to enable him to gather evidence for a defense and [to] present factors in mitigation," also require that a parolee be informed of all possible outcomes of his parole revocation hearing. Brief for Appellant at 6. In support of this view Winningham cites a line of Ninth Circuit cases, namely *Vanes v. United States Parole Commission*, 741 F.2d 1197 (9th Cir.1984); *Raines v. United States Parole Commission*, 829 F.2d 840 (9th Cir.1987); and *Boniface v. Carlson*, 856 F.2d 1434 (9th Cir.1988). *See also White v. United States Parole Commission*, 856 F.2d 59, 61 (8th Cir.1988) ("Due process requires that a parolee be given written notice of the conditions of parole allegedly violated and of the possible action to be taken by the Commission.").

Having staked out his position on the requirements of the due process clause, Winningham presents his further argument in two parts. He argues first that to be entitled to habeas relief a petitioner need not show that failure to provide notice of possible hearing outcomes caused him prejudice and, second, that if a showing of prejudice is required he is entitled to relief because he suffered prejudice. Both of these arguments lack merit. We therefore need not, and expressly do not, decide the merits of Winningham's argument that the due process clause requires notice to the parolee of every possible outcome of his parole revocation hearing.

Winningham's argument that he need not show prejudice is squarely foreclosed by our holding in *White*. There we said that in order for defective notice to form a basis for habeas relief "a petitioner must demonstrate that he was prejudiced by the claimed defect." *White*, 856 F.2d at 61. *Accord D'Amato v. United States Parole Comm'n*, 837 F.2d 72, 77 (2d Cir.1988). *But see Boniface*, 856 F.2d at 1436 (discussing *Vanes* and *Raines*).

To show he was prejudiced, Winningham argues that although he was given notice of the alleged parole violations and advised of a number of possible hearing outcomes, by not being informed of the possibility of loss of "street time" he was not given sufficient incentive to "muster up much evidence in mitigation." Brief for Appellant at 8. He claims, in essence, that had he been notified of the possibility of losing street time, he would have presented mitigating evidence. Winningham does not indicate in his brief the nature of the mitigating evidence he might have presented, but at oral argument asserted that he would have presented evidence that he had a "minimal criminal record" and no previous parole violations, that his parole violations considered at the hearing did not involve criminal intent, and that he had made a "good adjustment" to his community treatment center and was "living up to the conditions of his parole." Each of these mitigating factors, however, was considered by the parole revocation hearing panel. In its hearing summary, the panel stated:

> The reports from the community treatment center are that [Winningham] had a good job in the community treatment center program and was doing well. They have indicated they will accept him back into their program.

> .   .   .   .   .

> Winningham does not have a serious prior record, having been involved in 1 conviction prior to his involvement in the instant bank robbery offense. Following his release to parole supervision the reports indicate he had a very good record and there is no indication of any actual return to criminal activity while in the community.... [T]he panel is of the opinion the mitigating factors would indicate a decision below the guidelines is warranted. The reports indicate that there apparently was no criminal intent in the commission of the violation behavior.... Although the re-parole guidelines indicate a range of 36 to 48 months the panel is recommending that he be given a release date 4 months from the

present which would have him serving approximately 8 months totally. Designated Record at 46–47. Thus, the very mitigating evidence that Winningham claims defective notice failed to induce him to present not only was before the panel but also favorably affected the panel's decision. Furthermore, the only evidence considered at the hearing to Winningham's detriment was the damage to property/trespass to land and leaving the district charges, and Winningham nowhere contends that he did not commit these parole violations.

Because Winningham has failed to make the required showing of prejudice, the District Court's denial of his petition is affirmed.