MEMORANDUM AND ORDER

WEBB, Chief Judge.
Before the court are plaintiffs Minn-Dak Farmers Cooperative, American Crystal Sugar Co., Southern Minnesota Beet Sugar Cooperative and Monitor Sugar Co.’s Motion for Leave to File a Supplemental Affidavit and Motion for Summary Judgment and defendant Michael E spy’s Motion to Dismiss or for Summary Judgment, defendant-interve-nors Florida Sugar Cane League and Rio Grande Valley Sugar Growers, Inc.’s Motion to Dismiss or for Summary Judgment. Oral argument on the motions was held on March 11, 1994. Plaintiffs were represented by Robert G. Hensley and Patrick S. Williams of Doherty, Rumble & Butler, St. Paul, Minnesota. Defendant was represented by David Schanzer, United States Department of Justice, Washington D.C., John Schneider, United States Attorney, Fargo, North Dakota and Lynn Crooks, Assistant United States Attorney, Fargo, North Dakota. Intervenor defendants were represented by - Donald M. Barnes of Arnet, Fox, Kintner, Plotkin & Kahn, Washington, D.C., and Duane H. Ilvedson of Nilles, Hansen & Davies, Ltd., Fargo, North Dakota. Defendant’s Motion for Summary Judgment is granted.

Background

The facts relevant to the court’s analysis are as follows.. Historically, the United States has been a large net importer of sugar.[1] Congress began a series of responses to this situation in the early 1980s. In 1981, Congress passed the Agriculture and Food Act of 1981 which provided a price support loan program to domestic sugar processors through the use of non-recourse loans from the Commodity Credit Corporation (CCC). That program now runs through the 1997 crop year. In 1982, the United States implemented an absolute quota which restricted the amount of sugar imported into the country. In 1985, approximately $55.2 million of sugar was forfeited to the CCC. In response, Congress shortly after enacted § 902 of the Food Security Act of 1985 which directs the President to use “all authorities available” to operate the sugar price support program “at no cost to the federal government.” Food Security Act of 1985, Pub.L. 99-198 § 902(a), 99 Stat. 1354, 1443 (1985) (codified at 7 U.S.C. § 1446g, note.) In 1988, the Council of the General Agreement on Tariffs and Trade (GATT) found the absolute tariffs and duties imposed on sugar imports by the United States to be illegal. The President responded by converting the absolute quota into a tariff-rate quota which restricted the amount of sugar imported into this country through the use of tariffs and duties. This quota became the principle device used to support the domestic price of sugar, with the adverse consequence of lowering imports to just 1 million short tons, a level too low to supply domestic sugar cane refiners with a sufficient amount of sugar. Nearly half of the refining companies and refineries open for business in 1981 had closed by 1988. The domestic sugarcane industry is dependent on the survival of the sugar cane refiners. In response, in 1990, Congress passed 7 U.S.C. § 1359aa et seq. which requires the Secretary of Agriculture to make quarterly estimates of domestic sugar consumption, stocks and production and of imports. The purpose of the statute includes providing what is commonly referred to as a “through-put” of raw sugar to sugar cane refineries and refining companies, that is to ensure that these companies have available for processing a sufficient supply of raw sugar in order to remain economically viable. An additional purpose of the statute was to ensure a minimum market to foreign producers thereby satisfying GATT concerns. Under § 1359bb of that provision, the Secretary is authorized to impose marketing allotments on sugar beet and sugar cane processors if imports are estimated at less than 1.25 million short tons, raw value. (It is the Secre *1425 tary’s interpretation of this provision that is at issue in the instant case.) On May 11, 1993, the Secretary modified the Tariff Rate Quota by changing the amount of sugar that would qualify for the tariff-rate from 1.357 million short tons to 2.5 million short tons for a two-year period. This effectively set the import ceiling at the same level as the minimum amount which must be imported under 7 U.S.C. § 1359aa et seq., or the import floor. From June through September of 1993, the World Agricultural Supply/Demand Estimate (WASDE) report set import estimates at 1.25 million short tons.
Plaintiffs are four sugar beet processors, organized and located in the states of North Dakota, Minnesota and Michigan.[2] On June 30, 1993, citing the Agricultural Adjustment Act of 1938(AAA) 7 U.S.C. § 1359aa, et seq. as authority, the Secretary of Agriculture (Secretary) imposed marketing allotments on sugar beet and sugarcane processors. The Secretary’s stated purpose was to elevate sugar prices and to avoid forfeitures of sugar to the CCC. The Secretary interpreted the language of 7 U.S.C. § 1359bb(a)(l) as authorizing discretion to estimate carryover stocks in such a way as to result in the avoidance of the forfeiture of sugar to the CCC. The Secretary admits to selecting an estimate of carryover stocks which would, when used in the formula for estimating imports set out in the statute,[3] result in a total estimate of sugar imports at less than 1.25 million short tons, the figure that triggers the imposition of marketing allotments. 7 U.S.C. § 1359cc. The Secretary estimated sugar imports at 1.249 million short tons for the year 1993. Plaintiffs allege the Secretary has misinterpreted the Allotment Statute, specifically 7 U.S.C. § 1359bb, by reading it as authority to manipulate the carryover stock estimates in order to trigger market allotments, and, thereby, avoid sugar forfeitures, when objective measures of sugar imports indicate those would be above the 1.25 million short ton trigger amount. Plaintiffs allege the Secretary’s interpretation and subsequent action was arbitrary, capricious and an abuse of discretion, or otherwise not in accordance of the law. The plaintiffs request this court to review and set aside the Secretary’s decision pursuant to 5 U.S.C. § 706(2)(A) and to interpret 7 U.S.C. § 1359bb.

Analysis

Venue

The court exercised its jurisdiction over this case by hearing the arguments for dismissal and summary judgment. Defendant had moved to dismiss for improper venue, asserting that 28 U.S.C. § 1391(e) prevents plaintiffs from bringing the ease in this district (1) because this in not where the Secretary, in his official capacity, “resides,” and (2) because only one of the plaintiffs “reside” in this district. A plaintiff may bring an action against an officer or employee of the United States in any district in which:
1) a defendant in the action resides, 2) a substantial part of the events or omissions giving rise to the claim occurred ... or 3) the plaintiff resides if no real property is involved in the action.
28 U.S.C. § 1391(e). Because not each of the plaintiffs reside in this district, defendant argues venue here is improper. Defendant’s specious argument ignores a long line of federal eases holding otherwise. See, e.g., Exxon Corp. v. F.T.C., 588 F.2d 895 (3d Cir.1978). To accept defendant’s narrow reading of the statute would result in an unnecessary multiplicity of lawsuits. This court does not believe Congress intended each and every plaintiff with a cause of action against a governmental officer located in Washington, D.C. to travel to that city to plead his or her case. Such a requirement would exalt the federal officer or employee above the citizens he is bound to serve. In keeping with Exxon, this court determines this action is properly venued.

*1426
Mootness

Defendant also asserts this case should be dismissed as moot because the marketing allotments are no longer in place. A case becomes moot when the issues presented are no longer “live” or the parties “lack a legally cognizable interest in the outcome.” Murphy v. Hunt, 455 U.S. 478, 481, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982) (quoting United States Parole Comm’n v. Geraghty, 445 U.S. 388, 396, 100 S.Ct. 1202, 1208, 63 L.Ed.2d 479 (1980)). However, an exception to that general rule arises when cases are “capable of repetition, yet evading review.” Id. This exception is limited to cases in which: (1) the challenged action was too short-lived to be fully litigated, and, (2) there is a reasonable expectation the aggrieved party will be subjected to the same action again. Id. In this case, the Secretary lifted the marketing allotments before the case was fully litigated. The court is reluctant to find this action is moot, thereby causing its dismissal, based on the Secretary’s termination of the marketing allotments. When an administrative agency withdraws the offending order and yet continues to maintain its action was legal, “repetition is likely” and the claim should not be considered moot. Doremus v. United States, 793 F.Supp. 942, 946 (D.Idaho 1992) (quoting Nader v. Volpe, 475 F.2d 916, 917 (D.C.Cir.1973)) (quoting Southern Pacific Terminal Co. v. Interstate Commerce Comm’n, 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911).) Based on the facts that the plaintiffs will continue to process sugar beets, that the sugar market will continue to fluctuate, thereby, at times, causing a threat of forfeiture to the CCC, and that the Secretary is convinced of the legality of his action, a “reasonable expectation” exists that this controversy will recur involving the same parties. Murphy, 455 U.S. at 482, 102 S.Ct. at 1183. Therefore, this court finds this is a live controversy and defendant’s motion to dismiss the case for mootness is denied.

Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure “mandates the entry of summary judgment ... against a party failing to make a.showing sufficient to establish the existence of an element essential to that party’s case_” Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The court must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences to be drawn from the facts. See Schrader v. Royal Caribbean Cruise Lines, Inc., 952 F.2d 1008, 1013 (8th Cir.1991); reh’g denied (8th Cir.1992). Summary judgment is improper if the court finds a genuine issue of material fact; however, the mere existence of some alleged factual dispute will not defeat an otherwise properly supported motion. Vacca v. Viacom Broadcasting of Missouri, Inc., 875 F.2d 1337, 1339 (8th Cir.1989). The issue is whether the evidence submitted presents a sufficient disagreement as to the material facts so that submission to a jury is required, or whether it is so one sided that one party must prevail as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, 106 S.Ct. 2505, 2511-12, 91 L.Ed.2d 202 (1986). There is no sufficient factual disagreement requiring submission of the instant case to a jury. The questions presented are questions of law and so summary judgment is appropriate.

Scope of Review

When a district court is called on to review the actions of an administrative agency, such as the United States Department of Agriculture (USDA), the reviewing court may only set aside those final actions that are found to be “arbitrary, capricious and an abuse of discretion, or otherwise not in accordance with the law.” 5 U.S.C. § 706(2)(A). In this case, the court is called on to review the Secretary’s interpretation of 7 U.S.C. § 1359aa et seq., and, more specifically, 7 U.S.C. § 1359bb. Because the Secretary of Agriculture implements this provision under a- delegation of administrative authority, the court is guided by the principles enunciated in Chevron U.S.A., Inc. v. Natural Resources Defense Council, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). The court faces two questions: the first of these is whether Congress has directly spoken to the precise question at issue; and, the second is whether the Secretary’s interpretation of the statute, and his subsequent action, is based on a permissible construction of the statute. Id. The Secretary contends that Congress has *1427 expressed its clear intent that the Secretary use 7 U.S.C. § 1359bb to avoid forfeiture of sugar to the CCC in three ways.
First, Congress expressed this intent through the following language:
[t]he Secretary shall estimate—
(A) the quantity of sugar that will be consumed in the United States ... and the quantity of sugar that would provide for reasonable carryover stocks;
(B) the quantity of sugar that will be available from carry-in stocks or from domestically-produced sugarcane and sugar beets for consumption in the United States ..
(C) the quantity of sugar that will be imported for consumption in the United States ...
7 U.S.C. § 1359bb(a)(l). Defendant urges that Congress’ choice of the phrase “would provide for reasonable carryover stocks” gives the Secretary the discretion to use a reasonable figure for those stocks that would avoid forfeiture of sugar to the CCC, rather than an objective measurement of actual estimated carryover stocks. Defendant points out that Congress gave no such leeway when it directed the Secretary to estimate consumption, carry-in stocks, and domestic production. In the case of those factors, Congress used the following language: “will be consumed” and “will be available from carry-in stocks and domestic production.”
The second way, defendant argues, in which Congress expressed its intent that the Secretary have the authority to impose marketing allotments as a method of avoiding sugar forfeitures is found in the reading of the sugar program as a whole. Specifically, defendant urges that the passage of the “no-cost” provision, codified at 7 U.S.C. § 1446g note, authorizes the Secretary to use import allotments to avoid CCC sugar forfeitures. The language relied upon by the Secretary is as follows:
(a) Beginning with the quota year for sugar imports which begins after the 1985/1986 quota year, the President shall use all authorities available to the President as is necessary to enable the Secretary of Agriculture to operate the sugar program established under section 206 of the Agricultural Act of 1949 [section 1446g of this title] at no cost to the Federal Government by preventing the accumulation of sugar acquired by the Commodity Credit Corporation.
7 U.S.C. § 1446g note.
Finally, the Secretary points to 7 U.S.C. § 1359cc(b)(2) as providing the link between the allotment statute and the no-cost provision. That section provides: “The Secretary shall adjust the overall allotment quantity to the maximum extent practicable to avoid forfeiture of sugar to the Commodity Credit Corporation.” 7 U.S.C. § 1359cc(b)(2).
Though the Secretary’s arguments are persuasive, they do not convince this court that Congress has “directly spoken to the precise issue at question.” Chevron, 467 U.S. at 842, 104 S.Ct. at 2781. Rather they go to the second part of the court’s analysis, that is, whether the Secretary’s interpretation is based on a permissible construction of 7 U.S.C. §§ 1359bb and 1359ec and of the no-cost provision.

Construction of § lS59bb

Based on the entire record, the court is struck by the creative manner in which the Secretary pursued the ultimate goal, that is, the avoidance of sugar forfeitures to the CCC. Plaintiffs argue that the Secretary is using an unrelated provision (that is not even directed at him, but at the President) to justify juggling figures so that market allotments could be triggered. They argue that nowhere in 7 U.S.C. § 1359bb, or indeed, in the entire governing act, is the Secretary explicitly given the authority to do what he has done. They are correct. However, that does not end the inquiry for the sugar support program is a complex statutory scheme and plaintiffs interpretation, though appealingly straightforward, is not the only plausible construction.
The phrase “would provide for reasonable carryover stocks” is an ambiguous one. The language is imprecise—what “would provide for reasonable carryover stocks” for domestic supply alone may be vastly different from “what would provide for reasonable carryover stocks” for the purpose of shoring up the sugar market. The choice of language does at least indicate Congress intended these stocks be estimated in a manner differ *1428 ent from that used to estimate domestic consumption, production or carry-in stocks. Plaintiff argues, and the Secretary agrees, there are objective measures available by which the carryover stocks could have been calculated. For example, the Secretary had available the WASDE report- published monthly by the Economic Research Service of the United States Department of Agriculture (USDA). Specifically, the Secretary might have used the June 10, 1993 WASDE estimate of carryover stocks at 1.485 million short tons. Plaintiffs urge that the Secretary ought to have used such an objective measure of carryover stocks, rather than the 1.432 million short tons figure finally used. But Congress did not direct the use of an objective measurement to estimate carryover stocks. It is a presumption of statutory construction that when Congress uses different language in different parts of a statute, a different effect is intended, unless there exists legislative history that negates the presumption. United States v. Stauffer Chemical Co., 684 F.2d 1174 (6th Cir.1982), aff'd, 464 U.S. 165, 104 S.Ct. 575, 78 L.Ed.2d 388 (1984). Plaintiffs have failed to direct the court to legislative history that would negate the presumption in this case. It is clear that Congress intended a delegation of interpretive authority to the Secretary and that delegation envisions a different process for estimating carryover stocks than that used to estimate domestic consumption, production and carry-in stocks.
Accepting that presumption, the court agrees that Congress did grant discretion to the Secretary in determining “reasonable carryover stocks” and, therefore, he is not held to an objective measurement of those stocks. The next step, then, is to determine whether, in light of the purpose of the AAA and of the sugar price support program as a whole, the Secretary’s estimate was a “quantity of sugar that would provide for reasonable carryover stocks” or, as plaintiff contends, it was arbitrary, capricious and an abuse of that discretion.
The “no cost” requirement of the sugar price support program was added to that program in 1985. Food Security Act of 1985, Pub.L. 99-198, § 902(a), 99 Stat. 1443. The market allotment section, with its accompanying formula, was added to the Agricultural Adjustment Act of 1938 when Congress passed the 1990 Farm Act. 7 U.S.C. 1359aa, et seq. It is proper to presume that Congress acts with full knowledge of existing law when enacting a new statute or revising an existing one. Estate of Wood v. Commissioner of Internal Revenue, 909 F.2d 1155, 1160 (8th Cir.1990) (quoting Johnson v. First Nat’l Bank of Montevideo, 719 F.2d 270, 277 (8th Cir.1983)), cert. denied, 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984). The newly-enacted or revised statute, “absent a clear manifestation of contrary intent,” is presumed to be harmonious with existing law. Id. Plaintiff argues that nowhere in the amendment to the AAA did Congress specifically direct the Secretary that the market allotment provision was one of the “all authorities” referred to in the “no cost” provision. 7 U.S.C. 1446g note. This lack of specific language falls far short of a “clear manifestation” that Congress did not intend that the two provisions be construed to be harmonious.
Section 1359cc(b)(2) of Title 7 supports this conclusion and reads, “The Secretary shall adjust the overall allotment quantity to the maximum extent practicable to avoid forfeiture of sugar to the Commodity Credit Corporation.” 7 U.S.C. § 1359cc(b)(2). This section clearly demonstrates that Congress intended a connection to exist between market allotments and forfeiture to the CCC. It does not demonstrate specific direction from Congress that the Secretary manipulate the formula to trigger market allotments, but it does provide a nexus between the AAA and the “no cost” provision. This nexus provides clear support for the Secretary’s interpretation of 7 U.S.C. § 1359bb.
The Secretary is charged by Congress to administer the sugar price support program. That “necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly by Congress. Chevron, 467 U.S. at 843, 104 S.Ct. at 2782. This court would not have filled that gap in the way the Secretary chose to do.’ The court is of the view that the manipulation of the formula, relatively late in the market year, caught the plaintiffs off guard. There appears to be an inherent unfairness to these *1429 particular plaintiffs in the Secretary’s manipulation of the formula to trigger market allotments, in light of the fact that the brunt of the effect of the allotments fell to them. The sugar cane processors, on the other hand, seem to have benefited. However, the effect of an administrative act on a single processor (or a group of processors) cannot be viewed in a vacuum. These processors are part of a national sugar market. Each of them is aided by the sugar price support program. Ten years ago, the positions of the sugar beet and sugar cane processors vis a vis the market were reversed. That situation could repeat itself and the sugar cane processors may someday feel the weight of similar administrative action. Attempts to spare sectors of the market from the adverse effects of action that benefits the market as a whole would be shortsighted folly.
While the court would not have attained the goal of avoiding sugar forfeitures to the CCC in the same way as the Secretary, the court must recognize that Congress has left a gap in the interpretation of the sections in question and that the Secretary has the authority to fill that gap. Where the gap is implicit, as is the case here, the “court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of the agency.” Chevron, 467 U.S. at 844, 104 S.Ct. at 2782. The court must give deference to the Secretary’s interpretation of any ambiguous provisions of the statute in question. Pauley v. Bethenergy Mines, Inc., 501 U.S. 680, 696-97, 111 S.Ct. 2524, 2534, 115 L.Ed.2d 604 (1991). Such judicial deference reflects sensitivity to the proper roles of the three branches of our government. Id.
Accordingly, the Secretary’s interpretation of 7 U.S.C. § 1359bb was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance of the law.

The Market Allotment

As noted above, the actions and decisions of a administrative agency are afforded deference by the district court. Having found the Secretary’s interpretation of 7 U.S.C. § 1359bb to be a permissible construction of that statute, the next question is whether the actual implementation of market allotments was arbitrary, capricious or an abuse of discretion. This question must be answered within the framework of the Secretary’s interpretation of the statute and under the circumstances as they existed at the time the decision was made. A close reading of the record as a whole, particularly the Administrative Record, reveals that the Secretary considered and implemented other strategies to shore up sugar prices before implementing market allotments. It also shows that the Secretary considered the imposition of market allotments over time and only imposed them after the market price continued to drop below redemption prices. The Administrative record includes notices of intent to forfeit a total of about 153,000 tons of sugar to the CCC from three sugar beet processors and letters urging the Secretary to implement market allotments from forty-eight sugar processors or cooperatives. These notices and letters were dated beginning early March of 1993. At least three of the four plaintiffs were aware of the possibility that market allotments might be imposed to avoid sugar forfeitures as early as March 25, 1993, as evidenced by their letter to the Secretary of that date asking that allotments not be imposed. Clearly, the Secretary did not make his decision quickly or in a vacuum. The Administrative Record also includes Informational and Decisional Memoranda to the Secretary that change in tone from advice to refrain from imposing market allotments in early March, 1993 to a recognition by June of 1993 that the market would not rebound, making forfeitures likely and market allotments necessary. Upon careful review of the record as a whole, the court finds that the Secretary’s decision to implement market allotments was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance of the law. However, the court does suggest to the Secretary that should it be necessary to utilize market allotments for the same purpose in the future, official notice of his intent should be given in a manner that allows the sugar industry to respond to that decision and to plan accordingly. This is a basic concept of fairness and one that should be followed where there are no overriding concerns that militate against it.

*1430
The Market Allotment Allocation

On August 6, 1993, Plaintiffs filed an administrative appeal with the USDA concerning their individual allocations of allotments and have informed the court that the appeal has been settled by the parties. Further, plaintiffs agree that that portion of the complaint alleging that the allotments were not allocated in a fair and equitable manner and, instead, that the Secretary arbitrarily, capriciously, without authority of law, and without substantial evidence established the allotments and allocations, should be dismissed. The court, therefore, will not reach the issue of the fairness of the allocation of the allotments.

Treble Damages

Congress has, since the filing of this action, amended the treble damage provision of 7 U.S.C. § 1359bb(d). Plaintiffs agree that the portion of their Complaint relating to treble, damages, specifically, paragraphs 39, and 46 through 49 should be dismissed as moot.

Conclusion

Therefore, plaintiffs Minn-Dak Farmers Cooperative, American Crystal Sugar Co., Southern Minnesota Beet Sugar Cooperative and Monitor Sugar Co.’s Motion for Leave to File a Supplemental Affidavit (docket # 67) is hereby GRANTED. Plaintiffs’s Motions to Compel Discovery (docket # 15 and # 67) are hereby DENIED as moot.
Further, plaintiffs Minn-Dak Farmers Cooperative, American Crystal Sugar Co., Southern Minnesota Beet Sugar Cooperative and Monitor Sugar Co.’s Motion for Summary Judgment (docket # 24) is hereby DENIED.
.Further, defendant Michael Espy, Secretary of Agriculture’s Motion to Dismiss (docket # 11, part one) is hereby DENIED.
Further, defendant Michael Espy, Secretary of Agriculture’s Motion for Summary Judgment (docket # 11, part two) is hereby GRANTED.
Further, defendant-intervenors Florida Sugar Cane League and Rio Grande Valley Sugar Growers, Inc.’s Motion to Dismiss (docket # 51, part one) is hereby DENIED.
Further, defendant-intervenors Florida Sugar Cane League and Rio Grande Valley Sugar Growers, Inc.’s Motion for Summary Judgment (docket # 51, part two) is hereby GRANTED.
The above-entitled action is hereby DISMISSED.
IT IS SO ORDERED.

. Those imports reached a high of 6.2 million short tons, raw value in 1977.

. Minn-Dak Farmers Cooperative is a cooperative association organized under the laws of the state of North Dakota. American Crystal Sugar Company is a cooperative and Southern Minnesota Beet Sugar Cooperative is a cooperative association organized and existing under the laws of the state of Minnesota. Monitor Sugar Company is a corporation organized under the laws of Michigan.

. The formula set out in the statute is: Imports = Consumption + Reasonable carryover stocks - Production — Carry-in stocks. See, 7 U.S.C. § 1359bb(a)(l)(C)(i) & (ii).