# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

**No. 21-5256**

**September Term, 2023**

FILED ON: JUNE 25, 2024

ANDI GJOCI, ET AL.,

APPELLANTS

v.

UNITED STATES DEPARTMENT OF STATE, ET AL.,

APPELLEES

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:21-cv-00294)

---

Before: SRINIVASAN, *Chief Judge*, HENDERSON and KATSAS, *Circuit Judges*.

## J U D G M E N T

This appeal was considered on the record from the United States District Court for the District of Columbia and on the briefs and oral argument of the parties. The panel has accorded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). It is hereby

**ORDERED AND ADJUDGED** that the district court's order denying a preliminary injunction be **AFFIRMED**.

I.

The legal and factual backdrop of this case is set forth in detail in the court's contemporaneously issued opinion in *Goodluck v. Biden*, No. 21-5263, slip op. at 3–5 (June 25, 2024). We provide only a brief summary here.

The Immigration and Nationality Act affords aliens from countries with low rates of immigration to the United States the opportunity to apply for an immigrant visa. 8 U.S.C. § 1153(c). These visas are known as diversity visas. The State Department randomly selects a number of applicants to become "eligible" to receive diversity visas "for the fiscal year involved." *Id.* § 1153(e)(2). Selectees must submit a full written application for a visa for themselves and any derivative beneficiaries, appear for an interview before a consular officer, and demonstrate that

they satisfy all admissibility requirements before the Department will issue a visa. *See id.* §§ 1153(d), 1182(a); 22 C.F.R. §§ 40.1(*l*)(2), 42.33(g).

The opportunity to apply for diversity visas is limited. Selectees "remain eligible to receive such visa[s] only through the end of the specific fiscal year for which they were selected." 8 U.S.C. § 1154(a)(1)(*I*)(ii)(II). In addition, the number of diversity visas is capped at 55,000 per fiscal year. *Id.* § 1151(a)(3), (e).

For fiscal-year 2021, the State Department declined to issue diversity visas and deprioritized processing of diversity-visa applications in response to the COVID-19 pandemic. *Goodluck*, slip op. at 4–5. The plaintiffs in this case are fifty-nine DV-2021 visa lottery selectees and their derivative beneficiaries. While the selectees timely submitted complete applications, they were not selected for interviews.

The plaintiffs filed a complaint challenging the State Department's policies and sought an injunction requiring the State Department to adjudicate their diversity-visa cases. After the State Department resumed visa processing, the plaintiffs amended their complaint and submitted a renewed motion for injunctive relief. On September 1, 2021, the district court denied the motion, concluding that the plaintiffs had failed to show a substantial likelihood of standing for any of their claims. The plaintiffs now appeal.

II.

We review the district court's denial of a preliminary injunction for abuse of discretion. *In re Navy Chaplaincy*, 697 F.3d 1171, 1178 (D.C. Cir. 2012). We review de novo any legal conclusions underlying the district court's decision, and we review for clear error any findings of fact. *Id.*

We find that at least one selectee has standing, and we reject the government's argument that this case is moot. But we affirm the district court's judgment because the plaintiffs cannot establish a likelihood of success on the merits.

A.

A party seeking a preliminary injunction must "show a 'substantial likelihood of standing' . . . under the heightened standard for evaluating a motion for summary judgment." *Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 377 (D.C. Cir. 2017) (quoting *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 912–13 (D.C. Cir. 2015)). A party who fails to make that showing "is not entitled to a preliminary injunction." *Food & Water Watch*, 808 F.3d at 913. To establish standing, a party must demonstrate a concrete injury in fact that is fairly traceable to the action at issue and redressable by a favorable judicial decision. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).

2

The plaintiffs argue that they are harmed by the government's challenged COVID-19 policies and the lingering effects of those policies because those policies and the subsequent delays caused an increased risk of the plaintiffs not receiving a diversity visa. We conclude that at least one selectee, Sudip Pun, has demonstrated standing based on his allegations of injuries caused by those lingering effects. Pun had a current visa number and was documentarily qualified as of October 1, 2020, the start of fiscal-year 2021. His application would have been processed and his interview scheduled by the embassy in Kathmandu, Nepal. Taking Pun's allegations as true, as we must at this stage of the case, the government's policies deprioritizing the processing of diversity visas substantially increased the likelihood that his visa application, which was ready for adjudication for the entirety of fiscal-year 2021, would not be adjudicated.

Pun's injury—an increased risk of not having his visa adjudicated based on defendants' policies and the lingering effects thereof—is a cognizable injury in fact for purposes of standing. And, if Pun is correct that the policies were unlawful and that district courts have equitable discretion to require processing of visas after the end of the fiscal year, that injury would be traceable to the government's policies and redressable by a judicial decision in his favor.

Even so, the government asserts that the impact of COVID-19 on the processing of applications means that Pun's injuries are not traceable to the government's policies. It is true that the Kathmandu embassy, like many others, was struck hard by COVID-19. For portions of fiscal-year 2021, government lockdowns led to a complete halt in visa processing. And due to COVID-19 infections, the embassy operated much of the year at less-than-full capacity. Despite these logistical hurdles, however, the embassy still processed applications for some types of visas, adjudicating over 1800 visas between March 1 and July 15, 2021.

The ability of the embassy to adjudicate at least some visas demonstrates that Pun's injury is fairly traceable to the government's policies. His application was ready for adjudication for the entire fiscal year. He has sufficiently alleged that, absent the government's policies, his application could have been processed at least at *some point* during the fiscal year. Because "Article III standing does not require that the defendant be the most immediate cause, or even a proximate cause, of the plaintiffs' injuries" and instead "requires only that those injuries be 'fairly traceable' to the defendant," *Attias v. Carefirst, Inc.*, 865 F.3d 620, 629 (D.C. Cir. 2017) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014)), that is sufficient.

B.

The government also argues that this case is moot because its policies have expired or been rescinded. We disagree. The plaintiffs contend that they were injured by the lingering effects of the government's policies, alleging that the government unreasonably delayed adjudication and harmed plaintiffs by "running the clock" on the fiscal year-end. First Amended Compl. ¶¶ 382–419, J.A. 348–55. The plaintiffs, then, have "a legally cognizable interest in the outcome" of this

3

case in the form of the potential relief of an order requiring processing of their visa applications. *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980). As a result, the case is not moot.

C.

Although we have jurisdiction over this appeal, we affirm the district court's denial of the plaintiffs' motion for a preliminary injunction because the court lacked equitable discretion to extend diversity-visa eligibility or reserve visas past the end of the fiscal year. Our opinion in *Goodluck v. Biden* controls. There, we considered whether a district court has equitable discretion to preserve visa eligibility and reserve visas past the end of the fiscal year for which eligibility was granted. *Goodluck*, slip op. at 6–17. We held that a district court lacks that authority. *Id.* at 9–17. Because Congress established that a selectee's diversity-visa eligibility runs "only through the end of the specific fiscal year for which they were selected," 8 U.S.C. § 1154(a)(1)(*I*)(ii)(II), the remedy sought by the plaintiffs falls outside of a district court's authority: district courts are without "equitable power to override an 'explicit cutoff date' established by Congress." *Goodluck*, slip op. at 10 (quoting *INS v. Pangilinan*, 486 U.S. 875, 884 (1988)).

Because the plaintiffs' visa eligibility expired on September 30, 2021, and because the district court was without equitable discretion to extend that eligibility or reserve visas past that date, the district court did not abuse its discretion by denying the plaintiffs' motion for a preliminary injunction. We thus affirm the district court's judgment.

*     *     *

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41.

**Per Curiam**

**FOR THE COURT:**
Mark J. Langer, Clerk

BY:    /s/
        Daniel J. Reidy
        Deputy Clerk

4