**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

NOV 26 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

C.L., an individual,

      Plaintiff - Appellee,

  v.

DEL AMO HOSPITAL, INC., a California corporation,

      Defendant - Appellant.

No. 24-3345

D.C. No.
8:18-cv-00475-DOC-DFM

MEMORANDUM[*]

Appeal from the United States District Court
for the Central District of California
David O. Carter, District Judge, Presiding

Argued and Submitted October 21, 2025
Pasadena, California

Before: R. NELSON and VANDYKE, Circuit Judges, and COLE, District Judge.[**]

Defendant–Appellant Del Amo Hospital ("the Hospital") appeals the district court's decision granting a permanent injunction preventing it "from denying entry and accompaniment" of Plaintiff–Appellee C.L.'s "service dog when C.L. is

---

    [*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

    [**]    The Honorable Douglas Russell Cole, United States District Judge for the Southern District of Ohio, sitting by designation.

admitted for in-patient treatment" at the Hospital's National Treatment Center

("NTC").  The Hospital has since closed the NTC for unrelated reasons.  The

district court had jurisdiction over C.L.'s ADA claims under 28 U.S.C. § 1331 and

over her California state law claims under 28 U.S.C. § 1367(a).  We have

jurisdiction to consider this case's justiciability under 28 U.S.C. § 1291.  However,

as explained below, we lack jurisdiction to reach the merits as this case is moot.

We vacate the district court's decision and remand with instructions to dismiss the

underlying action.  *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39–40 (1950).

We review questions of Article III justiciability de novo.  *Valle del Sol Inc.

v. Whiting*, 732 F.3d 1006, 1014 (9th Cir. 2013).  Since we find that this case is not

justiciable, "the only function remaining to the court is that of announcing the fact

and dismissing the cause."  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94

(1998) (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1869)).

1. This case is moot, and the voluntary cessation exception does not apply.

To show that her original claim was not moot, C.L. would need to show both that

her original injury in fact still exists, and that such an injury is redressable through

relief issued by a court.  *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397

(1980) (explaining that standing needs to persist throughout the litigation for a case

to not be rendered moot); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)

(listing the elements of standing).  Since C.L.'s original injury stemmed from

denials to the NTC, the NTC's closure obviated C.L.'s original injury in fact and prevents redressability since C.L. seeks only injunctive relief and not money damages. *Uzuegbunam v. Preczewski*, 592 U.S. 279, 290–91 (2021).

For purposes of the voluntary cessation exception, "voluntary" means an action that is taken in response to and because of the litigation. *Pub. Utils. Comm'n of State of Cal. v. FERC*, 100 F.3d 1451, 1460 (9th Cir. 1996). While choosing to close a business is undoubtedly "voluntary," in the colloquial sense, it is not always "voluntary cessation" in the legal sense. The Hospital closed the NTC for reasons unrelated to this litigation: Dr. Fridley, the face of the program, died. His passing caused a decline for the program; the NTC began losing patients until it was no longer financially sustainable for the Hospital. Since the Hospital closed "its business for purely economic reasons . . . rather than intentionally ceasing its unlawful behavior to moot litigation" no voluntary cessation occurred, and this case is moot. *See id.*

2. At the time C.L. filed suit, she lacked standing to bring claims against the Hospital's remaining programs because she could not show that she suffered an "actual or imminent" injury. *TransUnion*, 594 U.S. at 423. The only actual injury C.L. suffered stemmed from the Hospital's seven denials, which prevented her from taking her dog to treatment at the NTC. But since the NTC's closure mooted that claim, C.L. needed to show that she faced an imminent injury from a

prospective denial at one of the Hospital's other treatment programs to establish a current injury in fact. She did not do so. When she filed suit, C.L. was not at risk of the Hospital denying her entry to treatment with her service dog. Only the NTC program screened patients for service dogs. And the Hospital would have admitted C.L. along with her service dog in the hospital's Del Sol program, the program most likely to treat C.L.'s conditions, had she sought treatment.

C.L. tries to point to two stipulations in the record to overcome these unfavorable facts. But a stipulation saying a policy hasn't changed says nothing about what that policy currently is or always was. The Hospital's policy was always to first conduct intake to evaluate potential patients' symptoms, and then determine to which unit, if any, they would be admitted. Of those units, only two could potentially deny a patient the ability to take in their service dog: the now-closed NTC and the Intensive Treatment Unit ("ITU"). Under hospital policy regarding the ITU, if a person came in with a service animal, the Hospital would simply admit that patient with their service animal to Del Sol rather than the ITU. Had C.L. admitted herself to the Hospital with her dog, she would have been offered treatment at the Del Sol program regardless of the symptoms she reported during the intake process.

There was no "certainly impending" injury or "substantial risk" that C.L. would be separated from her dog or denied treatment if she had tried to admit

herself to the Hospital.  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158–59 (2014).  Because C.L. did not suffer from an imminent injury and could not demonstrate an injury in fact, she lacked standing.  *TransUnion*, 594 U.S. at 423.

**Vacated and remanded with instructions to dismiss.**